## Jovanov Estate.

Argued March 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Leonard M. Mendelson*, with him *David J. Millstein*, and *Hollinshead and Mendelson*, for appellants.

*Henry G. Beamer, III*, with him *John A. Metz, Jr.*, *David Turets*, and *Metz, Cook, Hanna & Kelly*, for appellees.

Opinion Per Curiam, November 17, 1972:
Decree affirmed. Each party to pay own costs.

Dissenting Opinion By Mr. Justice Manderino:

I dissent from the affirmance of the lower court's decree. On January 28, 1971, Western Pennsylvania National Bank, acting as the guardian of the estate of Stevan Jovanov, who had been adjudicated an incompetent, entered into a contract with the appellants for the sale of certain real property in the estate. The contract was complete in all details and was executed by the appellants, as purchasers of the real property and by the guardian, as seller. When the contract was executed, the purchasers paid Five Hundred ($500) Dollars hand money to the seller, as required by the contract.

Subsequent to the execution of the sales contract, Stevan Jovanov died and the appellants were denied specific performance of the contract.

The majority and the lower court hold that the contract properly executed and signed by the guardian as seller and the purchasers prior to Jovanov's death, was not a legally binding contract because it was subject to court approval which was not obtained between the time of the signing of the contract and Jovanov's death.

There is no question that the contract was subject to court approval under the law. In addition, the contract contained a clause stating that it was subject to court approval, if applicable.

A contract is no less a contract, legal and binding, simply because *performance* under the contract by the parties is subject to a condition precedent. The condition of court approval does not make the court a party to the contract. To hold that court approval is necessary before a contract comes into existence is to hold that the court is to act as one of the bargainers with full freedom to contract or not contract. This role be-

longs to the guardian, not the court. The court must approve the contract if it is in the best interests of the incompetent. The court's decision is made within a specified legal limitation. The necessary court approval would only allow a discharge of *existing contractural duties* if the existing contract was illegal at the time of execution. See Restatement of Contracts §458 (1932). Court approval is not necessary for the formation of the contract.

Many contracts are entered into by fiduciaries, guardians and personal representatives which are subject to court approval. In none of these situations is the court a party to the contract. To hold that there is no contract until the court approves is to introduce uncertainty and insecurity into the business transactions of all fiduciaries.

The settlement of a negligence claim, for instance, might be voided at any time before court approval is obtained. A fiduciary could never execute a contract which is subject to court approval without concern that the other party might withdraw at any time before final court approval. This is the effect of holding that there is no legally binding contract until the court approves.

The court's approval is a condition precedent to performance, but it is not a prerequisite to the validity of the contract. Corbin on Contracts, §649, entitled: Appraisal, Approval, or Certification by a Third Person as an Express Condition of Duty, states: "In making a contract the parties may use language indicating that the 'contract' itself is conditional on some collateral event, such as *the approval* of a third person or *court* or commission, . . . In such cases, *it is quite incorrect to say that until the event occurs there is no contract: neither party has the privilege of revocation and no further expression of assent by the two parties is necessary. . . ."* (Emphasis supplied.)

The contract in this case was valid and binding. It did not state that the contract was revoked upon the death of the incompetent. The only consideration for the court was whether the contract was in the best interests of the incompetent at the time it was executed. Any other consideration by the court would give an incompetent an advantage not available to others. A court would not have the authority to refuse approval of an excellent bargain so far as the incompetent is concerned because oil was unexpectedly discovered on property and began to flow a few minutes before the ink in the judge's decree-signing pen. Parties who contract with guardians are entitled to the same protection of the law available in other contracts.

Following the incompetent's death in this case, the court had the authority to review the contract in order to determine if it was in the best interests of the incompetent at the time it was signed by the guardian. This question can be determined even though the incompetent has passed away. The court has no freedom to abrogate and impair an existing contract obligation under which *performance only* was subject to the condition precedent of court approval.

Under §620(a) of the Fiduciaries Act of April 18, 1949, P. L. 512, art. VI, 20 P.S. 320.620(a), states: "(a) Application to court. If any person makes a *legally binding agreement* to purchase or sell real or personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the application of any party in interest and after such notice and with such security, if any, as it may direct, in its discretion, may order specific performance of the agreement *it would have been enforced specifically had the decedent not died.*" (Emphasis supplied.) A guardian acts for an incompetent and the guardian in this case was a person with legal authority who made a *legally binding*

*agreement.* The court should have ordered specific performance if the agreement would have been enforced specifically had the decedent not died. The court's discretion is limited. No reason was given by the lower court which indicated that the agreement was not in the best interests of the minor when signed by the guardian. The court erred in holding that no legal contract ever existed. The decree of the lower court should be reversed and the matter remanded to determine if the contract, when signed by the guardian, was in the best interests of the incompetent. If it was, specific performance in favor of the appellants should be decreed.

Mr. Justice EAGEN joins in this dissent.